United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PEDRO ALEXANDER MATALLANA ALZATE,**<br><br>Petitioner,<br><br>v.<br><br>**SERGIO ALBARRAN, ET AL.,**<br><br>Respondents. | **Case No.: 4:26-cv-10866-YGR**<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner in this action is an asylum seeker from Colombia who was arrested during an immigration check-in on September 23, 2026 at the field office of Immigration and Customs Enforcement ("ICE") in San Francisco. On September 24, 2026, petitioner filed a motion for a temporary restraining order ("TRO"), which the Court granted the same day. In so ruling, the Court ordered respondents to show cause why the petition should not be granted and/or a preliminary injunction should not issue following the TRO's expiration. The Court held a hearing on October 8, 2026, during which the parties confirmed their agreement that the Court should decide the merits of the underlying petition on the papers and arguments submitted. At the hearing, the Court extended the TRO until October 20, 2026.

Having carefully considered the papers submitted and pleadings in this action, and for the reasons set forth below and more fully on the record, the petition for a writ of habeas corpus is hereby **GRANTED.**

## I. BACKGROUND

The following facts appear undisputed unless otherwise noted:

United States District Court
Northern District of California

Petitioner Pedro Alexander Matallana Alzate[1] is an asylum seeker from Colombia who entered the United States in or around May 2022 at or near Calexico, California. (Dkt. No. 6 ("Mtn.") at 1; Dkt. No. 10-2.) The Department of Homeland Security ("DHS") then detained petitioner and shortly thereafter released him on an order of recognizance ("OREC"). (Resp. at 1–2.) Petitioner contends, and respondents do not dispute, that he was released "[a]fter Respondents determined that Petitioner was not a flight risk or a danger to the community." (Mtn. at 1.) Petitioner also contends, and respondents do not dispute, that since his release, he "has settled in California"; "complied with all release requirements, including attending ICE checkins"; "filed his application for asylum in 2023 and has since received an employment authorization document ('EAD') and a social security number ('SSN')"; has maintained employment for approximately three years; and "has paid taxes for the past two years, 2024 and 2025." (*See* Mtn. at 1–2.) Petitioner also currently attends services at a Mormon temple in Fremont and has been in a committed relationship with his partner for approximately one year. (*Id.* at 2.)

On or around June 15, 2026, petitioner was arrested and charged with driving under the influence of alcohol ("DUI").[2] (Resp. at 2.) Petitioner contends, and respondents do not dispute, that he "was arrested while sleeping in [his] car" while it was parked outside his home in Fremont. (Dkt. No. 6-1 ¶ 12; *see also* Dkt. No. 6-2 ¶ 8 ("Mr. Matallana Alzate explained that he was arrested for alleged driving under the influence in June 2026 while he was sleeping in his car, which was parked outside of his home in Fremont.").) Petitioner also contends, and respondents do not dispute, that he "has not been convicted of this offense" and that he "does not have any other criminal history in the United States or anywhere else in the world." (Mtn. at 8.)

---

[1] Respondents identify petitioner as "Wilder Jaime Chavez Escobar," however the case caption and exhibits in their brief refer to petitioner as Pedro Alexander Matallana Alzate. Dkt. No. 10 ("Resp.") at 1. Petitioner's motion once refers to petitioner as "Pedro Alexander Matallana Lopez" but otherwise refers to him as Pedro Alexander Matallana Alzate. (Mtn. at 1.) The Court presumes that these errors reflect that the briefs were prepared in haste and do not present an actual dispute as to petitioner's identity.

[2] Elsewhere in respondents' brief, they state that petitioner's DUI arrest was in June 2016. Resp. at 1. Given the timeline described above, the Court construes this as an error and not a factual dispute as to the timing of the arrest.

On September 23, 2026, petitioner appeared at his ICE check-in at the San Francisco Field Office. (Mtn. at 2; Resp. at 2.) Two deportation officers interviewed petitioner, and subsequently "ICE informed Petitioner that he was under arrest due to his recent criminal arrest for DUI and took Petitioner into custody." (Resp. at 2.) Respondents state that ICE arrested petitioner pursuant to a warrant, attached as Exhibit 2 to respondents' counsel's declaration (Dkt. No. 10-2), however petitioner claims he "was not presented with a warrant for his arrest." (Mtn. at 2.) The same day, petitioner filed the instant petition and was subsequently transferred from the San Francisco Field Office to the Central Valley Annex in McFarland, California.[3] (First Status Rpt.)

On September 24, 2026, petitioner secured a TRO ordering his release from ICE detention, and he was released pursuant thereto. (*See* Dkt. No. 7 ("TRO Order"); Dkt. No. 8 ("Second Status Rpt.").) Respondents confirmed that they "shall not re-detain [petitioner] pending resolution of the forthcoming hearing." (Second Status Rpt. (quoting TRO Order).) At the hearing, the Court extended the TRO until October 20, 2026 so that the Court could issue a decision on the underlying petition.

In his petition, petitioner requests that the Court provide the following relief:

> 1. Assume jurisdiction over this matter;
>
> 2. Issue a writ of habeas corpus ordering Respondents to immediately release Petitioner from custody;
>
> 3. Declare that Petitioner's arrest and detention violates the INA, implementing regulations, and Due Process Clause of the Fifth Amendment[;]
>
> 4. Enjoin Respondents from transferring Petitioner outside California or deporting Petitioner pending these proceedings;
>
> 5. Enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and

[3] Given this timeline, respondents "agree that Petitioner was in this District at the time the habeas petition was filed, and therefore this transfer does not affect the Court's jurisdiction over the pending habeas petition." Dkt. No. 5 ("First Status Rpt.") (citing *Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024)).

United States District Court
Northern District of California

> convincing evidence, that Petitioner is a flight risk or danger to the community;
>
> 6. Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act and 28 U.S.C. § 2412; and
>
> 7. Grant such further relief as the Court deems just and proper.

(Dkt. No. 1 ("Pet.") at 11–12.)

## II. LEGAL FRAMEWORK

### A. Writ of Habeas Corpus for Violation of Due Process

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner who demonstrates that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is axiomatic that freedom from physical imprisonment or restraint "lies at the heart of the liberty that Clause protects." *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). It is also well-established that the Clause's protections extend to noncitizens in the United States regardless of their immigration status. *See id.* at 693; *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025).

### B. Statutory Framework

Section 1226(a) of Title 8 of the U.S. Code authorizes the Attorney General to issue a warrant and detain a noncitizen already present in the United States. The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pursuant to Section 1226, immigration officers are authorized to then release noncitizens who demonstrate that they "would not pose a danger to property or persons" and are "likely to appear for any future proceeding." *See* 8 C.F.R. § 236.1(c)(8). Accordingly, release pursuant to Section 1226(a) reflects "a determination by the government that the noncitizen is not a danger to the community or a flight

risk." *Saravia v. Sessions*, 280 F.Supp.3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The statute authorizes the Attorney General to "at any time . . . revoke a bond or parole authorized under subsection [Section 1226](a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). However, the government's decision to release a person after initially detaining him creates "an implicit promise that parole will be revoked only if he fails to live up to" the conditions of his release. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). In other words, once "a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia v. Sessions*, 280 F.Supp.3d at 1176. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal." *Id.*

## III. ANALYSIS

Petitioner asserts two claims for relief: (1) a violation of his right to substantive due process and (2) a violation of his right to procedural due process. (Pet. ¶¶ 55–62.) Because the Court concludes that petitioner prevails on his procedural due process claim for the reasons set forth below, the Court need not and does not reach petitioner's substantive due process claim.

"In order to analyze a procedural due process claim, [courts] engage in a two-step analysis: First, [they] determine whether the inmate was deprived of a constitutionally protected liberty or property interest. Second, [they] examine whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). This Order proceeds accordingly and briefly addresses respondents' jurisdictional challenges.[4]

### A. Jurisdictional Challenges

Respondents argue that the Court lacks jurisdiction to review ICE's decision to re-detain petitioner under Section 1226(e). That section provides:

---

[4] Respondents also argue that petitioner's re-detention did not violate the orders in *Garro Pinchi v. Noem*, 813 F.Supp.3d 973, 1026 (N.D. Cal. 2025). Although petitioner cites *Garro Pinchi*, he does not argue that any orders in that case were violated. Accordingly, the Court does not address this argument.

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). However, the Supreme Court has explained that this provision does not divest district courts of their traditional habeas jurisdiction or "bar constitutional challenge." *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). As respondents acknowledge in their brief, the Ninth Circuit has further reiterated this point in the context of adjudicating immigration-related habeas petitions. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) (Section 1226(e) does not preclude judicial review of "any error of law . . . including any claimed due process violation"); *Singh v. Holder*, 638 F.3d 1196, 1207 n.6 (9th Cir. 2011) (claims that the discretionary process itself was constitutionally flawed were cognizable in federal court on habeas review). Because petitioner here challenges the constitutionality of the procedures employed in revoking his parole, Section 1226(e) does not bar review of his procedural due process claim.

Similarly, respondents' argument that petitioner has failed to exhaust his administrative remedies provided under Section 1226(a) and its implementing regulation is unavailing. Petitioner's constitutional challenge is "beyond the competence of the [agency] to decide," so the prudential exhaustion requirement does not bar review. *See Zamorano v. Garland*, 2 F.4th 1213, 1224 (9th Cir. 2021).

Accordingly, the Court finds that it has jurisdiction to adjudicate petitioner's procedural due process claim.

### B. Protected Liberty Interest

Petitioner argues that his release pursuant to the OREC in May of 2022 created a constitutionally protected liberty interest in not being re-detained. Respondents contend that petitioner enjoys no such interest because petitioner "has not established the necessary 'connections' to earn a constitutional right to extra-statutory process." (Resp. at 9 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020)).)

Respondents' argument is unavailing. In fact, "[c]ourts in this district consistently hold that when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected



United States District Court
Northern District of California

liberty interest in remaining out of immigration custody." *Llanes Tellez v. Bondi*, 826 F.Supp.3d 1141, 1149 (N.D. Cal. 2025), *appeal dismissed*, 2026 WL 2445624 (9th Cir. June 17, 2026) (collecting cases). Moreover, for reasons this Court has previously explained, respondents' reliance on *Thuraissigiam* is misplaced in cases where a petitioner was initially detained near the border and then released on their own recognizance. *See Garcia v. Kaiser*, No. 4:25-CV-06916-YGR, 2025 WL 3500767, at *5 n.7 (N.D. Cal. Aug. 29, 2025) (explaining that *Thuraissigiam* was "a case in which the petitioner was apprehended at the border" and "never released from detention"). There, the Supreme Court found that the petitioner could not "claim any greater rights under the Due Process Clause" because he was detained "at the threshold of initial entry" and subsequently subject to a removal order prior to being released. *Thuraissigiam*, 591 U.S. at 107, 114. Here, by contrast, petitioner has established significant ties to this country since his release on his own recognizance more than four years ago. These include living in Fremont, California for approximately four years; maintaining steady employment; filing federal income tax returns in 2024 and 2025; attending services at a Mormon temple in Fremont; and developing a committed relationship with his partner. (*See* Mtn. at 1–2.) Such "established connections in this country" are sufficient to afford him "due process rights in deportation proceedings." *See Thuraissigiam*, 591 U.S. at 107.

For these reasons, the Court finds that petitioner's release from DHS custody in 2022 on his own recognizance, and the intervening ties he has made to this country, establish his protectible liberty interest.

### C. Sufficient Procedural Protections

Having found that petitioner has a constitutionally protected liberty interest, the Court applies the factors found in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to analyze whether deprivation of that interest was accompanied by sufficient procedural protections.[5] In *Mathews*, the

[5] Respondents argue that "[w]hether the *Mathews* test applies in this context is an open question in the Ninth Circuit," despite acknowledging that the Ninth Circuit has "assume[d] without deciding that *Mathews*" applies in reviewing constitutional challenges to immigration detention. Resp. at 8 (quoting *Rodriguez Diaz*, 53 F.4th at 1207). This Court—along with many others—has already concluded that the *Mathews* test applies in the immigration context, and the

Supreme Court held that:

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* The Court considers each.

**1. Private Interests Affected**

Petitioner argues that his loss of liberty would deprive him of his attachments to normal life, including his ability to provide "for himself and his family in Colombia" and pay "for his ailing mother's medical care." (Mtn. at 4–5.) In response, respondents rehash their argument that petitioner cannot have a private interest in "unreasonable expectations" to remain free from re-detention under the controlling statutory scheme. (Resp. at 8.)

For the reasons explained above, the Court finds that petitioner has a substantial private interest in remaining out of custody due to his release pending civil removal proceedings more than four years ago. That petitioner has formed the "attachments of normal life" in this country, which include maintaining employment that allows him to support his family, weigh strongly in favor of finding a substantial private interest here. *See Morrissey*, 408 U.S. at 482.

**2. Risk of Erroneous Deprivation**

"In civil immigration proceedings, the government may generally only detain people for two reasons: to prevent flight prior to removal or protect against a danger to the community." *Llanes Tellez*, 826 F.Supp.3d at 1153 (citing *Zadvydas*, 533 U.S. at 690). "[T]he risk of an erroneous deprivation [of liberty] is high where, as here, [the petitioner] has not received any bond or custody redetermination hearing." See *Singh v. Andrews*, 803 F.Supp.3d 1035, 1047 (E.D. Cal. July 11, 2025) (internal quotation marks removed).

---

government offers no reason to reconsider that holding here. *See Garcia*, 2025 WL 3500767, at *5 n.8.

Petitioner argues that the risk of erroneous deprivation of liberty here is high because respondents have not provided petitioner with *any* procedural safeguards, and thus a bond hearing before a neutral arbiter is required to revoke his parole. Respondents respond that the risk of erroneous deprivation and the value of additional process is low where the government had discretion to revoke petitioner's conditional parole under Section 1226(b) for his DUI arrest, which purportedly showed changed circumstances indicating that petitioner became (1) a danger to the community and (2) violated the terms of his OREC. [6] Separately, respondents argue that there is no risk of erroneous deprivation where the statute provides petitioner with procedural safeguards for challenging his re-detention via a post-detention bond hearing.

As to respondents' argument that petitioner's DUI arrest constitutes a change in circumstances justifying his re-detention, numerous courts in this district have held that a "DUI arrest," much less than even a DUI conviction, "fails to justify his re-detention without a pre-deprivation hearing." *Chavez Escobar v. Alberran*, 2026 WL 2640659, at *4 (N.D. Cal. Sept. 8, 2026); *Llanes Tellez*, 826 F.Supp.3d at 1153–54 (DUI *conviction* did not justify re-detention, especially where the government waited approximately eight months before determining re-detention was necessary); *Mucu Maaz v. Albarran*, 2026 WL 2447545, at *3 (N.D. Cal. Aug. 20, 2026) ("The Court accordingly has no trouble in joining the vast majority of courts in this Circuit that have rejected Respondents' argument and held that, absent evidence of urgent concerns, a pre-deprivation hearing is required even for noncitizens with new arrests for offenses such as driving under the influence since being released on bond and under Order of Release on Recognizance.") (collecting cases). As respondents acknowledged at the hearing, an arrest without conviction is merely an allegation of criminal wrongdoing and not evidence that the petitioner committed any

[6] As to the second ground, respondents claim that petitioner's release pursuant to the OREC was "subject to certain specified conditions," including that he "not violate any local, State, or Federal laws or ordinances." Resp. at 1. However, respondents have not submitted petitioner's OREC to this Court. At the hearing, respondents' counsel conceded to having not reviewed petitioner's OREC but relied instead on the contention that the OREC is a "standard form." Notwithstanding that an arrest alone is not evidence of a violation of any law, as explained below, the Court cannot make a finding on this record that petitioner's DUI arrest constituted a violation of his OREC because his OREC is not before the Court. Even standard forms contain substance to evaluate.

crime. *See Hernandez Serrano v. Albarran*, 2026 WL 1611876, at *3 (N.D. Cal. June 4, 2026) (collecting cases). Petitioner's proffer that he was arrested while sleeping in his car in front of his house and that respondents waited months after his arrest to re-detain him further undermine respondents' argument that petitioner's DUI arrest rendered him such a danger to the community to justify re-detention.

Respondents' cited authority, *Bello Reyes v. McAleenan*, is unpersuasive for three reasons. *See* 2019 WL 5214051, at *4 (N.D. Cal. July 16, 2019), *rev'd and remanded sub nom. Bello-Reyes v. Gaynor*, 985 F.3d 696 (9th Cir. 2021). *First*, there was "no dispute" in that case that "ICE had an objectively reasonable legal justification to re-arrest Petitioner" for his DUI arrest and conviction, whereas that issue is squarely disputed here. *Id. Second*, *Bello Reyes* was concerned with the petitioner's retaliatory free speech claim and not what process he was due when the government sought to revoke his parole. *Third*, that case was subsequently reversed, and it pre-dates substantial intervening precedent cited above, which has found that neither a DUI arrest nor conviction justifies re-detention without a hearing. Next, respondents' reliance on *United States v. Cisneros*, 2021 WL 5908407 (N.D. Cal. Dec. 14, 2021), for the proposition that an arrest alone is sufficient to constitute changed circumstances is also misplaced and has routinely been rejected by courts in this district. There, "ICE was working with local law enforcement related to the underlying arrest" for gang-related assaults. *See Mucu Maaz*, 2026 WL 2447545, at *3; *Cisneros*, 2021 WL 5908407, at *1. Those facts are materially different from this case, where ICE had no involvement in petitioner's DUI arrest.

Finally, respondents' argument that petitioner is not entitled to a pre-deprivation hearing under Section 1226(a) and "may instead only seek review of [his] detention by an ICE official once [he is] in custody" fails. (Resp. at 10–11 (citing *Rodriguez Diaz*, 53 F.4th at 1196–97).) Courts in this circuit have routinely held that post-deprivation procedures cannot prevent an erroneous deprivation of liberty, absent a showing of urgent circumstances requiring re-arrest and where a pre-deprivation hearing is impracticable. *See Chavez Escobar*, 2026 WL 2640659, at *5 (collecting cases). Respondents have made no such showing here, where they waited more than three months after the DUI arrest to re-detain petitioner.

### 3. Government Interest

Lastly, petitioner argues that the government's interest in re-detaining him without first providing notice and a custody hearing is minimal because (1) "[i]n immigration court, custody hearings are routine and impose a minimal cost" and (2) "detention for its own sake is not a legitimate governmental interest." (Mtn. at 6 (quoting *Cordero Pelico v. Kaiser*, 2025 WL 2822876, at *15 (N.D. Cal. Oct. 3, 2025)).) The Court agrees.

Respondents' argument that the government has a strong interest in "upholding the existing regulatory scheme" by re-detaining petitioner without a hearing rings hollow. (*See* Resp. at 14.) Petitioner has complied with all of his ICE check-ins to date and respondents have failed to show any changed circumstances that warrant urgent re-detention under the regulatory scheme. *See Ortega v. Bonnar*, 415 F.Supp.3d 963, 970 (N.D. Cal. 2019) (government's interest in re-detaining petitioner without a hearing is "low" where the government has not shown urgency and petitioner has "strictly complied with all the requirements of his release"). Ultimately, respondents fail to persuade on this element.

## IV. Conclusion

Based on the above, the Court **Grants** the petition.

It is hereby **Ordered** that respondents are permanently **Enjoined and Restrained** from re-detaining petitioner on the factual basis of this petition without notice and a pre-deprivation hearing before a neutral decisionmaker where the government bears the burden of proving by clear and convincing evidence that changed circumstances render him a danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent such harms.[7] This Order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

---

[7] The Court rejects respondents' argument that the Ninth Circuit's decision in *Rodriguez Diaz* changes the applicable burden of proof described here and articulated in *Singh v. Holder*. In *Rodriguez Diaz*, the petitioner had already received a bond hearing—during which it was determined that he was a danger to the community—and he argued that he was entitled to a *second* bond hearing under the Due Process Clause where the government bore the burden of proof by clear and convincing evidence. *See* 53 F.4th at 1194–95. The Ninth Circuit rejected this argument because it was "aware of no Supreme Court case placing the burden on the government to justify the *continued detention* of an alien, much less through an elevated 'clear and convincing'

The Clerk of the Court is directed to close this case and enter judgment for petitioner.

**IT IS SO ORDERED.**

Date: October 19, 2026

YVONNE GONZALEZ ROGERS
CHIEF UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

showing." *Id.* at 1211 (emphasis supplied). Here, by contrast, there has been no bond hearing, and petitioner was already released on recognizance upon a finding by DHS that he was not a danger to the community. As such, *Rodriguez Diaz* does not foreclose finding that the government should bear the burden of proof by clear and convincing evidence to change the status quo here (i.e., to re-detain petitioner after release), especially where petitioner has shown a protected liberty interest in his conditional release and has not previously received a bond hearing with procedural safeguards. *Rodriguez Diaz* expressly contemplated that burden-shifting may be "constitutionally necessary" where there is greater risk of error. *Id.* at 1212. Accordingly, the burden of proof articulated in *Singh* applies here.